## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

GLENNIE MARCIAL SUAREZ,       :
     Petitioner

                     :   CASE NO. 4:11-CV-349

     v.                              :

                     :   (JUDGE NEALON)

COMMONWEALTH OF               :
PENNSYLVANIA, ET AL.,         :
     Respondents                 :

*FILED*
*SCRANTON*

JUN 26 2014

PER _____
DEPUTY CLERK

## MEMORANDUM

On February 23, 2011, Petitioner, Glennie Marcial Suarez, an inmate currently incarcerated at the State Correctional Institution in Muncy, Pennsylvania filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging her convictions in the Lebanon County Court of Common Pleas on May 14, 2008, for drug related offenses. (Doc. 1). For the reasons set forth below, the habeas petition will be dismissed.

## Background

On three separate occasions, Petitioner and an accomplice sold cocaine to a confidential informant working for the Lebanon Country Drug Task Force. (Doc. 13-8, Trial Court opinion dated August 24, 2009). Search warrants were subsequently issued for the residence, storage unit, and vehicle shared by Petitioner and her co-defendant. (Id. at p. 3). The searches yielded seven (7)

bundles of heroin, 515 grams of cocaine, twenty-two (22) grams of crack cocaine, approximately $14,000 cash in drug proceeds, and distribution paraphernalia. (Id.). Petitioner was charged in a separate criminal information for each sale and for the drugs recovered in the searches. (Id. at pp. 2-4).

On March 27, 2008, Petitioner, assisted by an interpreter, entered an open guilty plea on all counts under the four (4) action numbers. See (Docs. 13-2, 13-3, 13-4, 13-5 at pp. 6); (Doc. 13-6, pp. 1-8); (Doc. 13-8, p. 4). The Commonwealth made a sentencing recommendation that she receive an aggregate sentence of ten (10) months to two (2) years in the cases relating to the drug sales, and a sentence of nine (9) years to twenty (20) years for the criminal action arising from the searches. (Docs. 13-2, 13-3, 13-4, 13-5 at ¶ 32); (Doc. 13-6, pp. 8-9); (Doc. 13-8, p. 4). Petitioner, a college graduate, completed a written guilty plea form, in both English and Spanish, for each case. (Docs. 13-2, 13-3, 13-4, 13-5)[1]; (Doc. 13-12, p. 5). The specific charges, the recommended sentence, and the maximum penalty[2] was listed on each form. (Docs. 13-2, 13-3, 13-4, 13-5). Inter alia,

---

[1] The sixth page of the standard guilty plea forms differed depending on whether the defendant had a "negotiated plea agreement" or whether it was an "open plea." See (Docs. 13-2, 13-3, 13-4, 13-5 at pp. 6). Petitioner and counsel signed the page "to be used in the event of an open plea." (Id.).

[2] There was at least one count in each case that carried a maximum sentence of fifteen (15) years. (Docs. 13-2, 13-3, 13-4, 13-5 at p. 1). The forms listed the

2

Petitioner was asked on the forms whether she understood that she had a "right to a trial by jury", "the right to confront and cross-examine all of the Commonwealth's witnesses", the right to "remain silent and [that] nothing [could] be held against [her] by refusing to testify in [her] own defense", and if she understood the charges to which she was pleading guilty. (Id. at ¶¶ 9, 12-14). She answered "Yes" or "Si" to each question in every case in both English and in Spanish. (Id.). When asked, in both English and in Spanish, if her guilty plea was "being given freely and voluntarily, without any force, threats, pressure or intimidation?", Petitioner responded affirmatively. (Id. at ¶ 17). She also affirmed that no promises had been made to persuade her to plead guilty, and that she was satisfied with the representation of her attorney. (Id. at ¶¶ 18-19). Petitioner responded "Yes" or "Si" when asked whether she understood that she was entering an open plea, that she could be sentenced to anything up to the maximum penalty allowed by law, that the sentence would be determined at the discretion of the sentencing judge, that the Commonwealth's recommendation was not binding on the court, and that the court was free to impose any sentence it deemed appropriate, including a sentence that exceeds the one recommended by the

---

maximum punishment and fine for each charge, as well as the total maximum penalty for the case. (Id.).

Commonwealth. (Id. at ¶¶ 29-33). Petitioner signed the forms, stating that she had read them in their entirety, understood their meaning, and still wished to enter an open plea of guilty. (Id. at p. 6). Defense counsel also signed each form, attesting that he had advised Petitioner of the contents and meaning of the documents, and that he believed she comprehended them and she understood what she was doing by pleading guilty. (Id.).

Additionally, Petitioner admitted her guilt to every charge in each action number during an on-the-record colloquy by Judge John C. Tylwalk. (Doc. 13-6); (Doc. 13-8, pp. 4-5). Judge Tylwalk discussed the charges and facts in each case. (Doc. 13-6, pp. 2-6). Petitioner stated that she understood and was pleading guilty because she actually committed each offense. (Id. at pp. 3-4, 7). The Judge explained that her plea was an open plea with a recommendation to be made by the Commonwealth and advised her of the sentence recommendations. (Id. at pp. 8-9). She answered, "Yes, sir", when asked if she had enough time to review the guilty plea form. (Id. at p. 7). When asked if she had "[a]ny questions at all about [her] plea agreement -- or the plea recommendation", Petitioner responded, "No, sir." (Id. at p. 9). She was questioned as to whether she understood all the questions on the guilty plea forms and if she gave truthful answers thereon, to which Petitioner replied "Yes." (Id. at p. 7). She was asked if counsel had

4

discussed with her the elements of the crimes, any possible defenses, and what the Commonwealth would have to prove. (Id. at pp. 9-10). Petitioner answered affirmatively and stated that she had no complaints about counsel's representation. (Id. at p. 10). Judge Tylwalk found her decision to plead guilty to be "freely, knowingly and voluntarily made." (Id.).

On May 14, 2008, Petitioner, assisted by an interpreter, appeared for sentencing. (Doc. 13-12). At the sentencing hearing, the Commonwealth recommended a sentence of nine (9) to twenty (20) years, less than originally discussed. (Id. at pp. 3-4, 7). Defense counsel requested leniency, arguing that although Petitioner was compliant in her co-defendant's actions, she was not actively involved in the drug business. (Id. at p. 5). Counsel noted Petitioner's lack of a prior criminal record and the three children in her care. (Id. at pp. 2, 5-7). Judge Tylwalk considered each argument, but highlighted the significant quantity of drugs involved. (Doc. 13-12, pp. 2-8). He apparently found that Petitioner was not merely complacent as she benefitted financially from the drug sales, pointing out that she was driving a BMW. (Id.). The Judge recognized that Petitioner's minor children, who were in the car during the controlled buys, would be orphaned because of her crimes, but commented that Petitioner's actions could have resulted in hundreds of other children getting addicted to cocaine and

5

heroine. (Id.). After considering the statements made at the sentencing hearing and the information contained in Petitioner's pre-sentence investigation report, Judge Tylwalk sentenced her to a total[3] term of ten (10) to twenty-two (22) years in prison. (Id. at pp. 8-11).

Petitioner filed a petition under the Post-Conviction Relief Act ("PCRA") on October 21, 2008, and an amended petition following the appointment of counsel. (Doc. 13-8, p. 6); (Doc. 13-11). After a hearing on June 16, 2009, the PCRA court concluded that trial counsel failed to file a direct appeal after being directed to do so and therefore reinstated Petitioner's direct appeal rights. (Id.); (Doc. 13-10).

A Notice of Appeal was filed on July 6, 2009, in which Petitioner raised two claims: (1) that her plea was not knowingly, intelligently, and voluntarily made; and (2) that her sentence was excessive. (Doc. 13-7, p. 4) (Pennsylvania Superior Court opinion, Commonwealth of Pennsylvania v. Suarez, 1175 MDA 2009 (Pa. Super.)); (Doc. 13-8, p. 7). First, she alleged that the trial court failed to conduct a proper colloquy. (Doc. 13-7, p. 4). She also claimed that counsel was ineffective

---

[3]On case number 1521-2007, Petitioner received a sentence of four (4) to eight (8) years on Count VI, a consecutive sentence of three (3) to six (6) years on Count IV, a consecutive sentence of three (3) to eight (8) years on Count II, and lesser concurrent sentences on the remaining counts and other three action numbers. (Doc. 13-12, pp. 8-13).

by inducing her to believe she was not technically pleading guilty to the drug charges because she was pleading to the conspiracy charges, and by inaccurately reassuring her that her co-defendant would explain, at sentencing, that the drugs were his. (Id. at pp. 4-5). As to her second issue on appeal, Petitioner argued that the sentencing court failed to consider that she had no prior record, that she had three minor children, and that the drugs belonged to her co-defendant. (Id. at p. 5).

On August 24, 2009, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925. (Doc. 13-8). The trial court determined that because Petitioner was provided with a Spanish interpreter and her plea colloquy was executed in Spanish, there was no indication that she failed to understand the proceedings due to a language barrier. (Id. at p. 8). The Court noted that Petitioner, a college graduate free of mental illness or the use of intoxicants or drugs, acknowledged that she understood the nature of the charges and possible sentences. (Id. at pp. 8-9). The trial court explained that Petitioner endorsed her guilty plea as being made freely and voluntarily, and specifically stated that she was satisfied with her counsel. (Id. at pp. 10-11). Next, the trial court concluded that not only was the sentence within the range provided by the Pennsylvania Sentencing Guidelines, but it was also within the range agreed to by Petitioner in the plea agreement. (Id. at pp. 11-18). The Court further commented

7

that the sentence was not excessive in light of the gravity of the offense. (Id.).

On March 25, 2010, the Pennsylvania Superior Court determined that the appeal issues were waived because Petitioner failed to properly preserve them at the time of sentencing or through post-sentence motions. (Doc. 13-7). The Court explained that although the PCRA court reinstated Petitioner's direct appeal rights nunc pro tunc, it did not reinstate her right to file post-sentence motions nunc pro tunc. (Id. at pp. 6-7), citing Commonwealth v. Liston, 977 A.2d 1089, 1093-95 (Pa. 2009)[4] (distinguishing claims that must be raised in a post-sentence motion to be preserved for appeal, such as the discretionary aspects of sentence, from ineffectiveness claims which are deferred until post-conviction collateral relief). Judgment of sentence was affirmed. (Doc. 13-7).

A petition for allowance of appeal was denied by the Pennsylvania Supreme Court on October 14, 2010. (Doc. 13-9). Petitioner did not file a petition for

---

[4]In Liston, the Pennsylvania Supreme Court, on August 17, 2009, vacated "that part of the Superior Court's order [dated January 8, 2008] that remanded the matter so that Appellee could file post-sentence motions." Liston, 977 A.2d at 1094 (discussing Commonwealth v. Liston, 941 A.2d 1279 (Pa. Super. 2008)). The Supreme Court concluded "that the Superior Court overstepped its authority" in determining "that all defendants who have been granted the right to file an appeal nunc pro tunc also must be granted an automatic additional right to file post-sentence motions nunc pro tunc" and improperly "contravened our decision in Grant", which was issued on December 31, 2002. Id. at 1092-94 (citing Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002)).

8

certiorari in the United States Supreme Court; therefore, judgment became final on January 12, 2011.  See Frazier v. Monroe County DA, 2013 U.S. Dist. LEXIS 166824, *10 (M.D. Pa. 2013) (Nealon, J.) (determining that judgment became final ninety (90) days after the Pennsylvania Supreme Court denied the defendant's petition for allowance of appeal because that was the expiration of the period to file a petition for certiorari in the United States Supreme Court).

On February 23, 2011, Petitioner filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1).  An Order was issued on March 22, 2011, pursuant to United States v. Miller, 197 F.3d 644, 648 (3d Cir. 1999), and Mason v. Meyers, 208 F.3d 414, 417 (3d Cir. 2000), notifying Petitioner of the limitations upon filing another habeas petition if her petition is considered by the Court, and giving her an opportunity to withdraw the petition.  (Doc. 5). Petitioner returned this Court's standard Notice of Election form on March 29, 2011, indicating that she wishes to have her petition ruled on as filed.  (Doc. 6).  A response to the petition was filed on June 9, 2011.  (Doc. 13).  Thereafter, the case was reassigned to the Undersigned.

The habeas petition raises three claims: (1) that Petitioner's guilty plea was not knowingly, intelligently, and voluntarily made; (2) that Petitioner did not understand the English language and therefore did not completely comprehend the

proceedings; and (3) that counsel was ineffective. (Doc. 1). In support of the first ground for relief, Petitioner alleges that the colloquy was insufficient, that counsel improperly induced her plea, that she was unaware she was pleading guilty to all crimes and thereby received a much longer sentence than expected, and that the drugs belonged to her co-defendant. (Id. at p. 5). Regarding the third claim, Petitioner contends that if not for counsel's errors[5] she would have insisted on going to trial and was therefore prejudiced to the extent of manifest injustice. (Id. at p. 8).

## Standards of Review

### A.    Exhaustion / Procedural Default

It is well-established that a federal court may not entertain the merits of a petition for writ of habeas corpus unless available state court remedies have been exhausted. 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, state prisoners must invoke one complete round

---

[5]The only alleged errors mentioned in the habeas petition are under the first ground for relief and state simply that Petitioner's "plea was improperly induced by her counsel" and that she received a much longer sentence than what she was told by her counsel. See (Doc. 1, p. 5).

of the state's established appellate review process. Id. at 845.

The habeas corpus petitioner shoulders the burden of establishing exhaustion of state court remedies. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). The threshold inquiry in the exhaustion analysis is whether the claims asserted in the habeas corpus petition have been "fairly presented" to the state courts. Picard v. Connor, 404 U.S. 270, 275 (1971). "All claims that a petitioner in state custody attempts to present to a federal court for habeas review must have been fairly presented to each level of the state courts." Lines, 208 F.3d at 159. See also Baldwin v. Reese, 541 U.S. 27 (2004) (holding that "to provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim").

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" 28 U.S.C. §2254(b); see also Werts v. Vaughn, 228 F.2d 178, 192 (3d Cir. 2000). It must be clear from existing

11

state law and state court decisions that an avenue is foreclosed before exhaustion will be excused. <u>Lines</u>, 208 F.3d at 163.[6] "The procedural default rule is designed to prevent habeas petitioners from avoiding the exhaustion requirement by defaulting on their claim in state court." <u>Grimes v. Wenerowicz</u>, 2013 U.S. Dist. LEXIS 157756, *17 (M.D. Pa. 2013) (Blewitt, M.J.), <u>adopted by</u> 2013 U.S. Dist. LEXIS 157208 (M.D. Pa. 2013) (Mariani, J.). "However, the procedural default doctrine only applies when a state procedural rule is consistently or regularly applied." <u>Gibbs v. Shannon</u>, 2013 U.S. Dist. LEXIS 153753, *10-11 (M.D. Pa. 2013) (Kosik, J.), <u>citing</u> <u>Banks v. Horn</u>, 126 F.3d 206, 211 (3d Cir. 1997) (holding that "[i]n order to prevent federal habeas corpus review, a state procedural rule must be 'consistently or regularly applied'"); <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir. 1996) (explaining that the court must "examine whether the state procedural rule on which they relied to foreclose review of the merits speaks in unmistakable terms or is 'firmly established and regularly followed'").

"In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause

---

[6]On May 9, 2000, the Pennsylvania Supreme Court issued judicial administrative Order No. 218, which deems claims exhausted after having been presented only to the Pennsylvania Superior Court.

for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). See also Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001); Keller v. Larkins, 251 F.3d 408, 415 (3d Cir.), cert. denied, 122 S.Ct. 396 (2001); Lines, 208 F.3d at 164-66; McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Ayala v. Varano, 2014 U.S. Dist. LEXIS 38947, *6-7 n.2 (E.D. Pa. 2014) (concluding that where the state court determined on direct appeal that a claim was waived, the claim was procedurally defaulted for purposes of federal habeas review).  To show "cause", a petitioner must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements. Murray v. Carrier, 477 U.S. 478, 488 (1986); Caswell v. Ryan, 953 F.2d 853, 862 (3d Cir.) cert. denied, 504 U.S. 944 (1992).  "Prejudice" will be satisfied if the habeas petitioner shows that the outcome was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993); Coleman, 501 U.S. at 750.  In order to demonstrate a fundamental miscarriage of justice, a petitioner must show that he is actually innocent of the crime by presenting new evidence of innocence. Schlup v. Delo, 513 U.S. 298 (1995); Keller, 251 F.3d 408.

13

### B.   Guilty Plea

"[G]uilty pleas are valid if both 'voluntary' and 'intelligent.'" Brady v. United States, 397 U.S. 742, 747 (1970), citing Boykin v. Alabama, 395 U.S. 238, 242 (1969). "A plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving." Hartzog v. Brooks, 2006 U.S. Dist. LEXIS 21620, *12-13 (M.D. Pa. 2006) (Muir, J.) (providing also that the plea may not be induced by threats or misrepresentations), citing Henderson vs. Morgan, 426 U.S. 637, 645 n.13 (1976). See also Dove v. York County, 2014 U.S. Dist. LEXIS 22310 (M.D. Pa. 2014) (Mannion, J.) (same).  The United States Supreme Court in Boykin held that "[s]everal federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial", including (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers.  Boykin v. Ala., 395 U.S. 238, 243 (1969). "However, the failure to specifically articulate the Boykin rights does not carry the day for the defendant if the circumstances otherwise establish the plea was constitutionally acceptable."  United States v. Stewart, 977 F.2d 81, 85 (3d Cir. 1992) (reasoning that "a defendant has the burden of persuasion to establish that a plea was neither intelligent nor voluntary").

Where the trial court followed the dictates of the comment to Pennsylvania Rule of Criminal Procedure 590[7], "[f]ederal law does not require a more detailed guilty plea colloquy." Carrion v. Corbett, 2008 U.S. Dist. LEXIS 47127, *15 (E.D. Pa. 2008) (finding that the guilty plea colloquy met the state law standards and that the petitioner was aware of his rights and intelligently and knowingly waived them). Moreover, Pennsylvania law allows the guilty plea colloquy to be conducted by defense counsel or the attorney for the Commonwealth, as permitted by the judge. Commonwealth v. Moser, 921 A.2d 526, 529 (Pa. Super. Ct. 2007). "[T]he examination does not have to be solely oral. Nothing precludes the use of a

---

[7]The comment to Rule 590 provides:
At a minimum the judge should ask questions to elicit the following information:
(1) Does the defendant understand the nature of the charges to which he or she is pleading guilty or nolo contendere?
(2) Is there a factual basis for the plea?
(3) Does the defendant understand that he or she has the right to trial by jury?
(4) Does the defendant understand that he or she is presumed innocent until found guilty?
(5) Is the defendant aware of the permissible range of sentences and/or fines for the offenses charged?
(6) Is the defendant aware that the judge is not bound by the terms of any plea agreement tendered unless the judge accepts such agreement?
(7) Does the defendant understand that the Commonwealth has a right to have a jury decide the degree of guilt if the defendant pleads guilty to murder generally?

written colloquy that is read, completed, and signed by the defendant, made part of the record, and supplemented by some on-the-record oral examination." Id. See also Keel v. Coleman, 2013 U.S. Dist. LEXIS 13721, *21-22 (W.D. Pa. 2013) (applying Moser and rejecting the habeas petitioner's claim his guilty plea was not voluntarily, knowingly and intelligently entered).

"A habeas petitioner challenging the voluntary nature of his or her guilty plea faces a heavy burden. The plea colloquy is designed to uncover hidden promises or representations as to the consequences of a guilty plea. It can hardly be gainsaid that declarations made under oath ought not to be lightly cast aside." Zilich v. Reid, 36 F.3d 317, 320 (3d Cir. 1994). "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). See also Dove v. York County, 2014 U.S. Dist. LEXIS 22310 (M.D. Pa. 2014) (Mannion, J.); Hartzog v. Brooks, 2006 U.S. Dist. LEXIS 21620, *12-13 (M.D. Pa. 2006) (Muir, J.) (holding that "state court determinations of underlying questions of fact constitute matters which should receive deference under § 2254").

Where a habeas petitioner challenges the "voluntary nature of a facially

16

valid guilty plea based on unfulfilled promises or representations by counsel [he] must advance specific and credible allegations detailing the nature and circumstances of such promises or representations." Zilich v. Reid, 36 F.3d 317, 321 (3d Cir. 1994), citing Lesko v. Lehman, 925 F.2d 1527, 1537-38 (3d Cir. 1991). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977).

## C.    Ineffective Assistance of Counsel

To establish counsel's ineffectiveness, a petitioner must show: (1) counsel's performance fell below an objective standard of reasonableness; and (2) the performance was prejudicial to the defense. Strickland v. Washington, 466 U.S. 668 (1984). There is a strong presumption that counsel is effective and the courts, guarding against the temptation to engage in hindsight, must be "highly deferential" to counsel's reasonable strategic decisions. Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002), cert. denied, 538 U.S. 911 (2003). The mere existence of alternative, even more preferable or more effective, strategies does not satisfy the first prong of the Strickland test. Id. at 86. To establish prejudice under the second prong, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

17

proceeding would have been different." Roe v. Flores-Ortega, 528 U.S. 470, 482 (2000) (quoting Strickland, 466 U.S. at 694). It is not necessary for the court to "guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." Id. at 85. The court must consider the totality of the evidence and the burden is on the petitioner. Strickland, 466 U.S. at 687, 695.

Additionally, there is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (rejecting the state prisoner's claim that counsel was ineffective for abandoning an insanity defense), citing Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003). "The question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable --a substantially higher threshold.'" Knowles, 556 U.S. at 123 (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)); Rico v. Leftridge-Byrd, 340 F.3d 178, 181 (3d Cir. 2003) (stating that a "state court decision based on a factual determination, such as that required under § 2254(d)(2), will not be overturned on factual grounds unless it was objectively unreasonable in light of the evidence presented in the state proceeding"). The federal court "must presume that the state court's determination

18

of factual issues was correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence." Rico, 340 F.3d at 181, citing 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 285 (3d Cir. 2000).

## Discussion

Initially, this Court finds that the first two habeas claims appear to be procedurally defaulted because the Pennsylvania Superior Court deemed them waived. See Sloan v. AG of Pennsylvania, 2010 U.S. Dist. LEXIS 101854, *33-34 (W.D. Pa. 2010) (concluding that where the state court on direct appeal found the claims waived because no objection had been made at trial, federal habeas review is precluded unless the petitioner can demonstrate cause and prejudice, or that a failure to consider the claims will result in a fundamental miscarriage of justice). Petitioner offers no explanation to excuse her default. However, in light of the timing of the PCRA court's order reinstating Petitioner's direct appeal rights and the temporary change in the law by the Pennsylvania Superior Court in Liston, which held that whenever a PCRA court reinstates a defendant's direct appeal rights, the PCRA court shall also permit the defendant to file post-sentence motions nunc pro tunc, this Court questions whether the state procedural rule foreclosing habeas review was "firmly established" or "consistently or regularly applied." See Banks, 126 F.3d at 211; Doctor, 96 F.3d at 684. Consequently, a

19

merits analysis will be conducted on all claims.

In her first ground for relief, Petitioner alleges that her guilty plea was not knowingly, intelligently, and voluntarily made. (Doc. 1, p. 5). She argues that the trial court did not thoroughly question her during the on-the-record colloquy. (Id.). Petitioner asserts that the court did not ask her "specific other important factors", but does not identify such factors. (Id.). Additionally, she alleges that the drugs were not hers, but were her co-defendant's, that she was unaware she was pleading guilty to all crimes and in return received a much longer sentence than what she was told by counsel, and that counsel improperly induced her plea. (Id.).

Petitioner's contention that she was not thoroughly questioned on the record, alone, is insufficient to prove that her plea was not valid. See Burke v. Krestes, 2010 U.S. Dist. LEXIS 76225, *81-82 (E.D. Pa. 2010) (concluding that although the trial court's oral colloquy was inadequate, evidence regarding the petitioner's written statement was sufficient to establish that the plea was knowing and voluntary), affirmed by 448 Fed. Appx. 266, 267 (3d Cir. 2011) (finding "no basis for disturbing the District Court's thorough and persuasive opinion and judgment"). Her vague allegation that the trial court failed to ask "specific other important factors" also fails to support her claim. See Blackledge, 431 U.S. at 74.

20

In <u>Burke,</u> the District Court concluded that the state trial court's oral colloquy was inadequate. <u>Burke,</u> 2010 U.S. Dist. LEXIS 76225 at *6, 81-82. Nevertheless, the District Court found "that the written statement and questionnaire that the petitioner completed to accompany his plea, coupled with the evidence that the petitioner discussed the statement with his counsel, is sufficient to establish that the petitioner was adequately informed of his rights before his plea and knowingly and voluntarily waived them." <u>Id.</u> at *82. Specifically, the "statement set out in detail the rights that the petitioner would be waiving by entering his plea, including the right to be presumed innocent and to remain silent, the right to a trial by jury and an appeal, and the right to confront the witnesses against him and to testify and present witnesses on his own behalf." <u>Id.</u> "[T]he statement asked whether the petitioner understood these rights and whether he understood that, by pleading guilty, he would be giving them up" to which the petitioner answered affirmatively." <u>Id.</u> The petitioner signed a certification stating "that he had read the statement, understood its full meaning, and that he was still requesting the Court to allow him to plead guilty." <u>Id.</u> at *83. Also, defense counsel signed a certification, "attesting that he had advised the petitioner of the contents and meaning of the statement and that, in counsel's belief, the petitioner understands the statement's meaning and the consequences of his plea."

21

Id. The Burke Court concluded that "[t]he statement provides persuasive evidence that the petitioner knowingly and voluntarily waived his rights in entering his plea." Id.

The written guilty plea forms signed by Petitioner, and by her attorney, in the underlying criminal actions provided the same important information as those in Burke. The forms advised Petitioner, inter alia, of the federal constitutional rights discussed in Boykin, 395 U.S. at 243. See (Docs. 13-2, 13-3, 13-4, 13-5 at ¶¶ 9, 12-14). See also Breeland v. Commonwealth, 2012 U.S. Dist. LEXIS 56505, *15-16 (E.D. Pa. 2012) (concluding that the written plea agreement, which informed the petitioner of the privilege against self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers "is sufficient proof to establish that petitioner was advised of his Boykin rights prior to the entry of his guilty plea"), adopted by 2012 U.S. Dist. LEXIS 56493 (E.D. Pa. 2012). Moreover, the oral colloquy was significantly more detailed than that in Burke. See Burke, 2010 U.S. Dist. LEXIS 76225 at *6 (noting that the "the trial court did not discuss with the petitioner the nature of the charges to which the petitioner would be pleading, the factual basis for the plea, or the range of possible sentences he could receive"). Despite Petitioner's habeas allegations that the drugs were not hers and that she was unaware she would be

22

pleading guilty to all crimes, the trial judge clearly explained all of the charges to her and the factual basis for each. <u>See</u> (Doc. 13-6, pp. 2-7). Petitioner stated that she understood and was pleading guilty because she actually committed each offense. (<u>Id.</u> at pp. 3-4, 7). Such "[s]olemn declarations in open court carry a strong presumption of verity." <u>Blackledge</u>, 431 U.S. at 74.

Her claim that the guilty plea was not knowingly, intelligently, and voluntarily made because she received a "much longer sentence" then told by counsel is also belied by the record. Not only was the recommended sentence listed on the guilty plea forms, but the trial judge informed Petitioner of the recommended sentence in each case at the time of her guilty plea. (Doc. 13-2, 13-3, 13-4, 13-5, ¶¶ 32); (Doc. 13-6, pp. 8-9). Specifically, on the first three cases, the Commonwealth recommended concurrent sentences of ten (10) months to two (2) years, with the Judge to decide whether that sentence run concurrent or consecutive to the fourth case, for which the recommended sentence was nine (9) years to twenty (20) years. (<u>Id.</u>). Thus, at the time of her plea, Petitioner could have reasonably expected to receive a sentence of <u>at least</u>[8] nine (9) years, ten (10) months to twenty-two (22) years imprisonment. Her actual sentence of ten (10)

---

[8]As will be discussed, the Commonwealth's recommendation was not binding on the court and the sentencing judge could impose a longer sentence. (Doc. 13-2, 13-3, 13-4, 13-5, at ¶ 33).

years to twenty-two (22) years, <u>see</u> (Doc. 13-12, p. 11), was only two (2) months longer than originally contemplated and therefore not so "much longer" as to render her plea unknowing.[9]

Moreover, although at the time of sentencing the Commonwealth had lowered its recommendation to a global nine (9) to twenty (20) years, the parties agreed that the open nature of the plea had not changed. <u>See</u> (Doc. 13-12, pp. 3-4). Petitioner understood that by entering an open plea, the Commonwealth's recommendation was not binding on the court and she could receive a sentence exceeding the one recommended by the Commonwealth, up to the maximum penalty allowed by law. (Doc. 13-2, 13-3, 13-4, 13-5, at ¶¶ 29-34). She also affirmed that other than the non-binding recommendation, no promises were made to persuade her to plead guilty. (<u>Id.</u> at ¶ 18). Accordingly, counsel's mistaken prediction as to the likely length of sentence did not invalidate Petitioner's guilty plea. <u>See</u> <u>Masciola v. United States</u>, 469 F.2d 1057, 1059 (3d Cir. 1972) ("An erroneous prediction of a sentence by defendant's counsel does not render a guilty plea involuntary.").

"This case falls well within well-established precedent: defense counsel's

_____

[9]On case numbers 1449-2007, 1450-2007, and 1451-2007, Petitioner received concurrent sentences of nine (9) months to two (2) years, less than the recommended sentence. (Doc. 13-12, pp. 11-13).

conjectures to his client about sentencing are irrelevant where the written plea agreement and in-court guilty plea colloquy clearly establish the defendant's maximum potential exposure and the sentencing court's discretion." United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007). Petitioner's sentence in action number 1521-2007 of four (4) to eight (8) years on Count VI, a consecutive sentence of three (3) to six (6) years on Count IV, a consecutive sentence of three (3) to eight (8) years on Count II, and lesser concurrent sentences on the remaining non-merging charges and cases, was higher than that recommended but much less than the maximum penalties allowed. (Doc. 13-12, pp. 8-13). The guilty plea forms listed the maximum possible sentences and fines for each charge, and informed Petitioner that she could be sentenced to anything up to the maximum penalty. See (Docs. 13-2, 13-3, 13-4, 13-5 at p. 1 and ¶¶ 15, 30). Each case included at least one charge that carried a maximum sentence of fifteen (15) years. (Id.). In case number 1521-2007, seven counts had a maximum penalty of fifteen (15) years, including Counts II, IV, and VI. (Doc. 13-5). Considering all the non-merging counts in all four cases, Petitioner could have received a sentence of up to 187 years imprisonment.[10] She signed the guilty plea forms acknowledging that

---

[10]Although the guilty plea forms did not consider merging counts when providing the total maximums, such error is harmless because Petitioner's actual sentence was lower than that stated on the forms. See Armstead v. Palokovich,

she was "aware of the permissible range of sentences and/or fines that can be imposed." See (Docs. 13-2, 13-3, 13-4, 13-5 at ¶ 15). Consequently, Petitioner's challenge to her guilty plea based on the sentence imposed fails. See Turner v. Mazurkiewicz, 2010 U.S. Dist. LEXIS 139965, *9-11 (E.D. Pa. 2010) (rejecting the petitioner's claim, that his guilty plea was involuntary because he was not informed of the maximum sentence for each charge, because the written colloquy, which the petitioner signed, informed him of the maximum sentence), adopted by 2011 U.S. Dist. LEXIS 5164 (E.D. Pa. 2011).

To the extent Petitioner challenges her plea as having been improperly induced by counsel, she offers nothing to substantiate her claim. See Lesko, 925 F.2d at 1537-38 (holding that a "collateral challenge to a guilty plea may be summarily dismissed when [the petitioner's] allegations of an unkept promise are inconsistent with the bulk of his conduct, and when he offers no detailed and specific facts surrounding the agreement") (internal quotations and citations

---

2009 U.S. Dist. LEXIS 128440, *26-27 (E.D. Pa. 2009) (concluding that the guilty plea was knowing and intelligent despite the fact that the trial judge overstated the possible maximum sentence, and determining that the misstatement did not improperly induce the petitioner's guilty plea because the sentence imposed was below the correct maximum sentence allowed by law and below the sentence that the petitioner was advised he could receive), adopted by 2009 U.S. Dist. LEXIS 99964 (E.D. Pa. 2009). See also United States v. Dixon, 308 F.3d 229 (3d Cir. 2002) (applying harmless error analysis where the petitioner was misinformed about his maximum possible sentence).

omitted). Moreover, on the written guilty plea forms, Petitioner affirmed that her plea was "being given freely and voluntarily, without any force, threats, pressure or intimidation", that no promises had been made to persuade her to plead guilty, and that she was satisfied with the representation of her attorney. See (Docs. 13-2, 13-3, 13-4, 13-5 at ¶¶ 17-19). At the plea hearing, she testified that she gave truthful answers on the written forms and that she had no complaints about counsel's representation. (Doc. 13-6, pp. 7, 10). In light of these sworn declarations, Petitioner fails to prove that her plea was not voluntary. See Zilich, 36 F.3d at 320; Mable v. Coleman, 2014 U.S. Dist. LEXIS 56358, *33 (M.D. Pa. 2014) (Jones, J.) (finding ample basis for the PCRA Court's conclusion that the plea was knowing and voluntary because, inter alia, the oral colloquy addressed the defendant's understanding of the written guilty plea colloquy and the terms of the plea agreement, and because the transcript showed that the defendant was not coerced to enter a guilty plea, understood the waiver of his trial rights, understood the charges against him, and was satisfied with his plea counsel).

In her second habeas claim, Petitioner alleges that she did not understand the language of the forum, that her language ability must be considered, and that she lacked the requisite level of comprehension. (Doc. 1, p. 6). However, Petitioner signed the written guilty plea forms, which were provided in both

27

English and Spanish, stating that she had read them in their entirety and understood their meaning. (Docs. 13-2, 13-3, 13-4, 13-5, p. 6). Defense counsel also signed the forms, swearing that he had advised Petitioner of the contents and meaning of the forms, and that he believed she comprehended them and she understood what she was doing by pleading guilty. (Id.). At the plea hearing, Petitioner, assisted by an interpreter, testified that she understood the charges against her and all the questions on the guilty plea forms. (Doc. 13-6, pp. 6-7). She attested to having provided truthful answers thereon, and stated that she did not have any questions about the Commonwealth's sentence recommendations. (Id. at pp. 7, 9). Petitioner was again assisted by an interpreter at her sentencing hearing. (Doc. 13-12).

"When the defendant has an interpreter, his difficulty with English does not entitle him to habeas corpus relief when the court follows the proper procedures for accepting a guilty plea and it is clear the plea was knowing and voluntary." United States v. Giraldo, 1992 U.S. Dist. LEXIS 11388, *12 (E.D. Pa. 1992). Having determined that the guilty plea colloquies were adequate and that the plea was knowing, voluntary, and intelligent, Petitioner's second claim for habeas relief will also be denied. Her challenge to the plea based on her inability to speak English is without merit because the written guilty plea forms were prepared in

28

both English and Spanish, and because she was assisted by an interpreter at the guilty plea hearing and at sentencing.  See United States v. Ortiz-Garcia, 383 Fed. Appx. 119, 127 (3d Cir. 2010) (holding that "it would be patently frivolous to argue that Hernandez's plea was involuntary because he did not understand English" because he had an interpreter at his plea-change and sentencing hearings, and, with the aid of a translator, appropriately responded to the court's questions during the colloquy establishing a knowing and voluntary plea).

Lastly, Petitioner alleges that trial counsel's ineffective performance affected the outcome of the plea process. (Doc. 1, p. 8).  Petitioner argues that if not for counsel's errors, she would not have pled guilty. (Id.).  However, other than the allegations mentioned above, that counsel improperly induced her plea and advised her that she would receive a shorter sentence, Petitioner does not explain how counsel was ineffective or delineate counsel's alleged "errors."

A "petitioner's claim of ineffective assistance must identify the specific errors that counsel is alleged to have made.  Conclusory allegations are not sufficient to support a petition under Section 2255." Sheppard v. United States, 2014 U.S. Dist. LEXIS 27770, *17 (W.D. Pa. 2014) (citing Blackledge, 431 U.S. at 74; United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000)); Hampton v. United States, 2011 U.S. Dist. LEXIS 52058, *18-19 (W.D. Pa. 2011).  As

previously discussed, Petitioner offers nothing more than a broad conclusory allegation that counsel improperly induced her plea, which is inconsistent with her sworn statements on the guilty plea forms and during her plea hearing. This unsupported claim is therefore " subject to summary dismissal." See Blackledge, 431 U.S. at 74; Robinson v. United States, 2012 U.S. Dist. LEXIS 103892, *18 (M.D. Pa. 2012) (Munley, J.) (denying the ineffective assistance of counsel claim because Robinson failed to explain how her attorney's advice led to an alleged involuntary or unintelligent plea).

    In light of her sworn statements and testimony establishing, inter alia, that she knew the maximum penalties and understood that the Commonwealth's sentence recommendation was not binding on the court, her argument that counsel's incorrect sentence prediction amounted to manifest injustice will also be denied. See United States v. Shedrick, 493 F.3d 292, 299 (3d Cir. 2007) (denying "Shedrick's § 2255 motion as to his claim that counsel was ineffective for failing to advise him of the potential for an enhancement or upward departure"); Eakle v. Warden, 2011 U.S. Dist. LEXIS 27999, *23-24 (M.D. Pa. 2011) (Jones, J.) (rejecting the habeas petitioner's claim that trial counsel was ineffective for promising that he would receive a specific sentence because the petitioner "clearly understood the penalties he faced by pleading guilty") (citing cases). Petitioner's

assertion that she would have insisted on going to trial but for counsel's ineffectiveness is similarly contradicted by her sworn statements and testimony. See Cheslak v. Piazza, 2008 U.S. Dist. LEXIS 7999, *23 (M.D. Pa. 2008) (Caputo, J.) (concluding that the petitioner's statements during the guilty plea colloquy, whereat he agreed that he understood that he had made no deals in connection with his guilty plea and that any recommendation was not binding on the court, contradicted his assertion that counsel assured him that he would receive leniency in exchange for his guilty plea and offer no basis to find that trial counsel acted unreasonably).

## Certificate of Appealability

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons set forth in this Memorandum, this Court will not issue a certificate of appealability. See Robinson, 2012 U.S. Dist. LEXIS 103892 (rejecting the petitioner's challenge to her guilty plea based on counsel's

alleged ineffectiveness and declining to issue a certificate of appealability); <u>Keel</u>, 2013 U.S. Dist. LEXIS 13721 at *26-27 (denying a certificate of appealability on the petitioner's claims, which challenged his state court guilty plea and sentence).

## Conclusion

Due to changes in state law, this Court cannot confidently conclude that the state procedural rule which would foreclose habeas review in this case was "firmly established"; therefore, a merits analysis was conducted on all claims. After review of the written guilty plea forms and the in-court colloquy, it is determined that Petitioner entered a knowing, voluntary, and intelligent plea. Her unsupported allegations of counsel's ineffectiveness in this regard are contradicted by her sworn statements. Further, as the guilty plea forms were provided in both English and Spanish and an interpreter assisted Petitioner during the guilty plea and sentencing hearings, her inability to understand the English language did not affect the validity of the plea. Consequently, the habeas petition will be denied.

A separate Order will be issued.

**Date:** June 25, 2014                                             **United States District Judge**